# Exhibit 5

| | |
|---|---|
| **From:** | Wally Dahya |
| **To:** | Williams, Jim |
| **Sent:** | 4/7/2016 9:21:43 PM |
| **Subject:** | Fwd: Final Georgeanne E-mail |
| **Attachments:** | SC1-#4085864-v1-Final_Georgeanne_e-mail.DOCX |

FYI

---------- Forwarded message ----------
From: **Frumkin, Joseph B.** <FRUMKINJ@sullcrom.com>
Date: Thu, Apr 7, 2016 at 2:57 PM
Subject: Final Georgeanne E-mail
To: Jack Stark <Jack.Stark@imergy.com>, Peter Blackmore <Peter@pblackmore.com>, Hanif Dahya <wdahya@gmail.com>, Chris Compton <cc81@aol.com>, "blockd@gtlaw.com" <blockd@gtlaw.com>, "Clayton, Jay" <claytonwj@sullcrom.com>

Attached accepts Jack's changes. Final is also copied below.

Dear Georgeanne:

KPMG has restarted their work and we are in the process of establishing a timeline for the completion of the audits at TERP and GLBL.

A completed audit is critical to TERP and GLBL and any further delay will almost certainly be value destructive. The timeline should not be that long but there are a few threshold issues that need to be addressed before KPMG will issue their opinion. I'd like to discuss two of these matters with you at your earliest convenience.

Substantive Consolidation Risk. KPMG has expressed concern about the issue of substantive consolidation. In short, whether there is a risk that TERP or GLBL will be pulled into a bankruptcy of SunE and "consolidated" with SunE, with their assets available to SUNE creditors. At the time of the IPOs of TERP and GLBL, Kirkland & Ellis provided non-consolidation opinions to the rating agencies and others. These opinions are lengthy, highly fact intensive and, in essence, rely on the continuing "separateness" of TERP and GLBL from SunE in various areas, including segregation and control of funds and assets, approach to lenders and other creditors and governance (including decision making in conflicted circumstances). It will be important for SunE to demonstrate to KPMG and to the creditors and investors in TERP and GLBL that the factual foundation in the K&E opinion regarding TERP and GLBL's separateness remain true and correct in all material respects. Substantive consolidation would almost certainly destroy SunE's (and the public shareholders') equity value in TERP and GLBL.

I would like to discuss this issue with you and KPMG. In this regard, it is critical that SunE not take any action that would further entangle (or be viewed as further entangling) SunE with TERP and GLBL without being certain that action does not increase the risk of substantive consolidation of TERP or GLBL. This is important to the KPMG audit of TERP and GLBL but its importance goes well beyond that issue. At a fundamental level, it is important to consider the effect any actions by SunE will have on the ability of TERP and GLBL to retain key executives and

managers; we believe that any destabilizing action at this point risk badly damaging the operations of the companies and shareholder value.

Management.  A key issue for KPMG is "tone at the top".  It appears that this issue may be a serious impediment to the completion of their audit work at SunE and, as a result, TERP and GLBL.  It begins, of course, with the liquidity disclosures and statements from last fall. But beyond that, I would like to know if the SunEdison independent directors have determined whether any SunE executive with control over financial reporting was aware that the "signed" commitment letter sent to the TERP Conflicts Committee by Rik Gahdia in connection with the Vivint transaction was fabricated and sent to TERP with the objective of securing $75m from TERP to fund the proposed Vivint settlement.   As we have discussed in the past, it troubles us that no one from the Committee or its advisors was allowed to be involved in the discussions with Vivint/Blackstone, and if we had not insisted upon access, we would not have learned of the attempted fraud. .

We also believe it is relevant, and would like to know if the SunE independent directors have determined whether any SunE executive  was aware that Rik Gahdia sought improperly to influence the Conflicts Committee's consideration of the Vivint transaction (as found by the Delaware Chancery Court). We were surprised to see that Rik, after the fact, was promoted and nevertheless entrusted with the subsequent negotiation of the Vivint transaction.

In recent days, we've also learned that Rik Gahdia signed the LAP guarantee on behalf of TERP without any authorization from the Conflicts Committee to do so.  This has led to a material financial claim against TERP and is another example of the way in which the tone at the top has damaged TERP and GLBL.

We were informed for many weeks that Paul Hastings, as independent counsel to the Audit Committee, was reviewing various matters and that a report was imminent.   Has that report been provided and, if so, did it address these issues or other issues that may bear on "tone at the top"?  Given their importance to the completion of the TERP and GLBL audits and the provision of other services under the management services agreement, we believe we are entitled to know the results of Paul Hastings work.  We would be happy to discuss these matters with Paul Hastings.

More broadly, I would like to discuss with you how the SunE board is thinking about its oversight responsibilities in light of what we see as repeated failures in setting an appropriate tone at the top—including as described in the complaint GLBL filed over the India transactions.

With the impending departure of Mark Schumaker, TERP and GLBL urgently need to understand who they can interact with on matters relating to completion of their audits.  I am told that as of today they have been unable to obtain this information from SunE.

Also, on a more positive note, we do seem to see the beginnings of cooperation from SunE's bankruptcy advisors on planning to minimize and jointly manage the effects of a SunE filing, and we are grateful for the intervention of the SunE independent directors to facilitate that cooperation.  There is more to do, and I hope you will continue to reiterate the importance of cooperation, but your efforts are having a positive effect.

Would you please contact me regarding these matters at your earliest convenience?

Thank you,

---

**From:** Jack Stark [mailto:Jack.Stark@imergy.com]
**Sent:** Thursday, April 07, 2016 2:05 PM
**To:** Frumkin, Joseph B.; Peter Blackmore; Hanif Dahya; Chris Compton; blockd@gtlaw.com; Clayton, Jay
**Subject:** SC1-#4085671-v1-Revised_Georgeanne_e-mail JS

I agree with Chris and perhaps a little more vigorously. I would just reference SUNE executives/mgmt.. That covers more ground and people. Attached are my thoughts and some clean-up on the doc where I think there is too much duplication.

Jack

---

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

Dear Georgeanne:

KPMG has restarted their work and we are in the process of establishing a timeline for the completion of the audits at TERP and GLBL.

A completed audit is critical to TERP and GLBL and any further delay will almost certainly be value destructive. The timeline should not be that long but there are a few threshold issues that need to be addressed before KPMG will issue their opinion. I'd like to discuss two of these matters with you at your earliest convenience.

Substantive Consolidation Risk. KPMG has expressed concern about the issue of substantive consolidation. In short, whether there is a risk that TERP or GLBL will be pulled into a bankruptcy of SunE and "consolidated" with SunE, with their assets available to SUNE creditors. At the time of the IPOs of TERP and GLBL, Kirkland & Ellis provided non-consolidation opinions to the rating agencies and others. These opinions are lengthy, highly fact intensive and, in essence, rely on the continuing "separateness" of TERP and GLBL from SunE in various areas, including segregation and control of funds and assets, approach to lenders and other creditors and governance (including decision making in conflicted circumstances). It will be important for SunE to demonstrate to KPMG and to the creditors and investors in TERP and GLBL that the factual foundation in the K&E opinion regarding TERP and GLBL's separateness remain true and correct in all material respects. Substantive consolidation would almost certainly destroy SunE's (and the public shareholders') equity value in TERP and GLBL.

I would like to discuss this issue with you and KPMG. In this regard, it is critical that SunE not take any action that would further entangle (or be viewed as further entangling) SunE with TERP and GLBL without being certain that action does not increase the risk of substantive consolidation of TERP or GLBL. This is important to the KPMG audit of TERP and GLBL but its importance goes well beyond that issue. At a fundamental level, it is important to consider the effect any actions by SunE will have on the ability of TERP and GLBL to retain key executives and managers; we believe that any destabilizing action at this point risk badly damaging the operations of the companies and shareholder value.

Management. A key issue for KPMG is "tone at the top". It appears that this issue may be a serious impediment to the completion of their audit work at SunE and, as a result, TERP and GLBL. It begins, of course, with the liquidity disclosures and statements from last fall. But beyond that, I would like to know if the SunEdison independent directors have determined whether any SunE executive with control over financial reporting was aware that the "signed" commitment letter sent to the TERP Conflicts Committee by Rik Gahdia in connection with the Vivint transaction was fabricated and sent to TERP with the objective of securing $75m from TERP to fund the proposed Vivint settlement. As we have discussed in the past, it troubles us that no one from the Committee or its advisors was allowed to be involved in the discussions with Vivint/Blackstone, and if we had not insisted upon access, we would not have learned of the attempted fraud. .

We also believe it is relevant, and would like to know if the SunE independent directors have determined whether any SunE executive was aware that Rik Gahdia sought improperly to influence the Conflicts Committee's consideration of the Vivint transaction (as found by the Delaware Chancery Court). We were surprised to see that Rik, after the fact, was promoted and nevertheless entrusted with the subsequent negotiation of the Vivint transaction.

In recent days, we've also learned that Rik Gahdia signed the LAP guarantee on behalf of TERP without any authorization from the Conflicts Committee to do so. This has led to a material financial claim against TERP and is another example of the way in which the tone at the top has damaged TERP and GLBL.

We were informed for many weeks that Paul Hastings, as independent counsel to the Audit Committee, was reviewing various matters and that a report was imminent. Has that report been provided and, if so, did it address these issues or other issues that may bear on "tone at the top"? Given their importance to the completion of the TERP and GLBL audits and the provision of other services under the management services agreement, we believe we are entitled to know the results of Paul Hastings work. We would be happy to discuss these matters with Paul Hastings.

More broadly, I would like to discuss with you how the SunE board is thinking about its oversight responsibilities in light of what we see as repeated failures in setting an appropriate tone at the top— including as described in the complaint GLBL filed over the India transactions.

With the impending departure of Mark Schumaker, TERP and GLBL urgently need to understand who they can interact with on matters relating to completion of their audits. I am told that as of today they have been unable to obtain this information from SunE.

Also, on a more positive note, we do seem to see the beginnings of cooperation from SunE's bankruptcy advisors on planning to minimize and jointly manage the effects of a SunE filing, and we are grateful for the intervention of the SunE independent directors to facilitate that cooperation. There is more to do, and I hope you will continue to reiterate the importance of cooperation, but your efforts are having a positive effect.

Would you please contact me regarding these matters at your earliest convenience?

Thank you,