Charles Wm. McIntyre (admitted *pro hac vice*)
Jessica E. Morrison (admitted *pro hac vice*)
**McGuireWoods LLP**
2001 K Street, NW, Suite 400
Washington, DC 20006
(202) 857-1700
Fax: (202) 857-2959
cmcintyre@mcguirewoods.com
jmorrison@mcguirewoods.com

*Counsel for KPMG LLP*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE: SUNEDISON, INC., SECURITIES LITIGATION**<br><br>**This Document Applies To:**<br><br>***Horowitz v. SunEdison, Inc.***, Case No. 1:16-cv-07917-PKC-AJP | **Case No. 1:16-md-02742-PKC-AJP**<br><br>**<u>ORAL ARGUMENT REQUESTED</u>** |

## DEFENDANT KPMG LLP'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS
## <u>PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ...............................................................................................3

    I.     PROCEDURAL HISTORY.................................................................................3

    II.    OVERVIEW OF ATRS'S ALLEGATIONS AS TO KPMG................................5

STANDARD OF REVIEW ..............................................................................................7

ARGUMENT ....................................................................................................................7

    I.     ATRS'S CLAIM MUST BE DISMISSED BECAUSE IT FAILS TO
         PLAUSIBLY ALLEGE SECTION 11 LIABILITY AGAINST KPMG. ..............7

         a.     ATRS Fails to Plausibly Allege Any Misstatements or Omissions
               by KPMG Related to 2014, the Only Period Covered by KPMG's
               Audit. .........................................................................................................8

         b.     ATRS Fails to Plausibly Allege That the Purported Internal
               Control Deficiencies Related to Financial Reporting and Were
               Thus Relevant to KPMG's ICOFR Opinion.............................................12

    II.    ATRS'S SECTION 11 CLAIM MUST BE DISMISSED FOR FAILURE
         TO STATE A CLAIM UNDER THE SUPREME COURT'S *OMNICARE*
         DECISION AND ITS PROGENY. .....................................................................14

         a.     ATRS Fails to Allege that KPMG Did Not Hold Its Opinion. ..................16

         b.     ATRS Fails to Allege a Single Misstatement of Fact Embedded in
               KPMG's Opinion. .....................................................................................17

         c.     ATRS Fails to Sufficiently Allege Misleading Omissions from
               KPMG's Opinion. .....................................................................................18

         d.     ATRS Fails to Allege that KPMG is Liable Under Section 11 for
               "Certifying" SunEdison's Financial Statements and Internal
               Controls.....................................................................................................21

CONCLUSION.................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*In re Am. Realty Capital Props., Inc. Litig.*,
   No. 15 MC 40 AKH, 2015 WL 6869337 (S.D.N.Y. Nov. 6, 2015) ...............................16, 23

*Anchor Sav. Bank, FSB v. United States*,
   81 Fed. Cl. 1 (2008), as corrected (July 16, 2008), *aff'd in part, remanded in
   part*, 597 F.3d 1356 (Fed. Cir. 2010)......................................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................................7, 12, 21

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)........................................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................................7, 21

*In re Braskem S.A. Sec. Litig.*,
   No. 15 Civ. 5132 (PAE), 2017 WL 1216592 (S.D.N.Y. Mar. 30, 2017) .................................8

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017) ...............................................................................12, 17, 18, 20

*In re CRM Holdings, Ltd. Sec. Litig.*,
   No. 10 CIV 00975 RPP, 2013 WL 787970 (S.D.N.Y. Mar. 4, 2013) ....................................10

*Cutsforth v. Renscher*,
   235 F. Supp. 2d 1216 (M.D. Fl. 2002)....................................................................................13

*In re Elec. Data Sys. Corp. Sec. & "ERISA" Litig.*,
   298 F. Supp. 2d 544 (E.D. Tex. 2004)....................................................................................13

*Escott v. BarChris Const. Corp.*,
   283 F. Supp. 643 (S.D.N.Y. 1968) .........................................................................................24

*In re Fairway Grp. Holdings Corp. Sec. Litig.*,
   No. 14 Civ. 0950, 2015 WL 4931357 (S.D.N.Y. Aug. 19, 2015) ................................. *passim*

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011)....................................................................................................16

*Friedus v. ING Groep N.V.*,
   736 F. Supp. 2d 816 (S.D.N.Y. 2010), *aff'd in part, vacated in part*, 601 F.
   App'x 59 (2d Cir. May 5, 2015) ...............................................................................................9

*In re Fuwei Films Sec. Litig.*,
    634 F. Supp. 2d 419 (S.D.N.Y. 2009) .................................................................6

*In re Global Crossing, Ltd. Sec. Litig.*,
    471 F. Supp. 2d 338 (S.D.N.Y. 2006) ...............................................................24

*Johnson v. CBD Energy Ltd.*,
    No. CV H-15-1668, 2016 WL 3654657 (S.D. Tex. July 6, 2016) .........................23

*In re Lehman Bros. Sec. and ERISA Litig.* (Lehman I),
    799 F. Supp. 2d 258 (S.D.N.Y. 2011) ..........................................................15, 18

*In re Lehman Bros. Sec. and ERISA Litig.* (Lehman II),
    131 F. Supp. 3d 241 (S.D.N.Y. 2015) ........................................................ *passim*

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976) ...............................................................................10

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010) ...............................................................................15

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015) .............................................................................. *passim*

*In re OSG Sec. Litig.*,
    971 F. Supp. 2d 387 (S.D.N.Y. 2013) .....................................................10, 21, 22

*Perry v. Duoyuan Printing, Inc.*,
    No. 10 Civ. 7235 (GBD), 2013 WL 4505199 (S.D.N.Y. Aug. 22, 2013) ..............15

*Querub v. Moore Stephens Hong Kong*,
    649 F. App'x 55 (2d Cir. 2016) ..........................................................................23

*In re Ramp Corp. Sec. Litig.*,
    No. 05 CIV 6521 (DLC), 2006 WL 2037913 (S.D.N.Y. July 21, 2006) ...............13

*RSM Prod. Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009) ................................................................10

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
    No. 1:12-cv-00993, 2016 WL 7117455 (M.D. Pa. Dec. 7, 2016) .............18, 19, 20

*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*,
    No. 2:14-cv-02571-MCE-KJN, 2017 WL 1063565 (E.D. Cal. Mar. 21, 2017) .....23

*Vladimir v. Deloitte & Touche LLP*,
    No. 95 Civ. 10319 (RPP), 1997 WL 151330 (S.D.N.Y. Mar. 31, 1997) ...............13

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
127 F. Supp. 3d 156 (S.D.N.Y. 2015) .......................................................................24

**Statutes**

Exchange Act of 1934 Section 10(b), 15 U.S.C. § 78j ........................................................3

Exchange Act Section 20(a), 15 U.S.C. § 78t .....................................................................3

Securities Act of 1933 Section 11, 15 U.S.C. § 77k ................................................ *passim*

**Other Authorities**

Fed. R.Civ. P. 8(a) ....................................................................................................7, 14, 21

Fed. R.Civ. P. 12(b)(6) ....................................................................................................1, 7

Fed. R. Evid. 201 ...........................................................................................................6, 13

PCAOB, *ACAP Committee's Recommendation Relating to the Auditor's
Reporting Model* (2010),
https://pcaobus.org/News/Events/Documents/04072010_SAGMeeting ...............................23

PCAOB Pre-Reorganized Auditing Standards and Interpretations,
https://pcaobus.org/Standards/Auditing/Pages/ PreReorgStandards.aspx ...................... *passim*

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ............................................................................3

MEMC Electronic Materials, Inc., Form 10-Q (Nov. 9, 2012) ..........................................9

SunEdison, Inc., Form 10-K (Mar. 6, 2014) .......................................................................9

SunEdison, Inc., Form 10-K (Mar. 2, 2015) ..............................................................5, 6, 14

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant KPMG LLP ("KPMG") submits this Memorandum of Law in support of its Motion to Dismiss the single claim brought against KPMG under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k ("Section 11") by Plaintiff Arkansas Teacher Retirement System ("ATRS" or "Plaintiff") in the Second Amended Consolidated Securities Class Action Complaint ("SAC") in *Horowitz v. SunEdison, Inc.*, No. 1:16-cv-07917 (PKC) ("*Horowitz*").

## PRELIMINARY STATEMENT

In this multi-district litigation action comprised of over sixty plaintiffs and forty-five defendants across nearly thirty complaints seeking billions in total damages, only one plaintiff in one action that did not even originally name KPMG alleges a single Section 11 claim against KPMG.  The ATRS claim against KPMG is a classic example of trolling for a deep pocket.

Significantly, ATRS initially demurred when offered the opportunity to amend its claim against KPMG.  But, after two purported whistleblowers subsequently filed complaints alleging corporate malfeasance, this Court granted ATRS's motion for leave to file a second amended complaint to incorporate these new allegations.  Troubling, and contrary to this Court's order, ATRS's complaint—filed after the parties were unable to reach a settlement during this Court's mandated global mediation effort—contains amended allegations against KPMG, the bases of which are nowhere to be found in the whistleblower complaints.

The sum, substance, and entirety of ATRS's factual pleading as to KPMG is the allegation that KPMG issued an unqualified audit report containing opinions on SunEdison, Inc.'s ("SunEdison") financial statements for the year ended December 31, 2014 and internal controls over financial reporting ("ICOFR") as at December 31, 2014, and that KPMG consented to the incorporation by reference of this audit report in an August 18, 2015 SunEdison stock

1

offering (the "Preferred Offering").  Notably, ATRS does not allege that SunEdison's 2014 financial statements contained any errors or material misstatements.  Rather, ATRS simply alleges that KPMG's opinion—that its 2014 year-end audit of SunEdison's financial statements and ICOFR was conducted in accordance with standards set forth by the Public Company Accounting Oversight Board ("PCAOB")—is a factual misstatement.

Critically, ATRS does not base that conclusion on any facts that are alleged to have existed at the time KPMG issued its audit report—which was accompanied by KPMG's prospective consent to the incorporation by reference of its report into certain future SunEdison registration statements—on March 2, 2015, or even at the time of the Preferred Offering. Instead, ATRS recites a series of events and circumstances that post-dated KPMG's report, consent, and the Preferred Offering, as well as statements purportedly from over a dozen "confidential witnesses."  These witnesses are not alleged to have ever communicated with KPMG, and the veracity of their "statements" is undermined by conflicts with the public record. Thus, ATRS simply seeks to rewrite history and transport future facts into the past in a desperate attempt to encompass KPMG in this morass.  ATRS's "Back to the Future" gambit fails as a matter of fact and law.

As demonstrated herein, ATRS's claim against KPMG belies both the laws of time travel and the legal requirement that pleadings must be factually plausible to avoid dismissal.  For example, ATRS makes much of SunEdison's growing liquidity problems that it (and the whistleblowers upon which it relies) alleges *began* in the fall of 2015 and accelerated into 2016, yet nowhere alleges that or how such developments existed *at the time KPMG issued its opinions* regarding *2014* and its corresponding consent.  Moreover, the absence of any suggestion that SunEdison's 2014 financial statements contained any errors or otherwise were misstated belies,

and at least renders implausible, ATRS's inference that SunEdison lacked sufficient internal control *over financial reporting* as at December 31, 2014.  This is particularly so in view of the fact that *none* of the "internal control" issues alleged in the SAC involved SunEdison's external financial reporting—which is the only subject of KPMG's ICOFR opinion.

In sum, ATRS simply fails to plausibly allege an actionable misstatement by KPMG under Section 11 as a matter of fact and law.  In any event, KPMG's professional opinions can only be subject to Section 11 liability under the very narrow circumstances set forth in *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318 (2015). ATRS's inference-laden, inconsistent, and conclusory allegations do not come close to pleading the exceptions set out by *Omnicare* and its progeny.  Essentially conceding as much, ATRS attempts to avoid the *Omnicare* pleading requirements altogether by alleging that KPMG is strictly liable under Section 11 for its "certification" of SunEdison's financial statements and internal controls, but ATRS utterly fails to plead any misstatements or omissions by SunEdison that KPMG allegedly certified.  By any legal measure, KPMG does not belong in this litigation.

## STATEMENT OF FACTS

### I.      PROCEDURAL HISTORY

Plaintiff Dina Horowitz initiated the *Horowitz* lawsuit on November 30, 2015 in the U.S. District Court for the Eastern District of Missouri.  Horowitz's eighteen page, seventy-two paragraph complaint asserted a claim for violations of Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j, and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5, against SunEdison, its CEO Ahmad Chatila, and its CFO Brian Wuebbels, and a claim for control person liability under Exchange Act Section 20(a), 15 U.S.C. § 78t, against Chatila and Wuebbels.  Horowitz amended the complaint on January 19, 2016, without adding new claims or defendants.

The *Horowitz* matter was administratively closed on April 26, 2016 as a result of SunEdison's April 21, 2016 bankruptcy filing.  However, a new lead plaintiff, Municipal Employees' Retirement System of Michigan ("MERS"), sought and obtained permission to file an amended complaint.  The 212-page, 498-paragraph amended complaint, filed on July 22, 2016, added a second new plaintiff, ATRS, as well as several claims against 16 new individual and institutional defendants MERS and ATRS hoped were beyond the reach of SunEdison's bankruptcy stay.  This included the single claim against KPMG under Section 11.  Am. Consolidated Sec. Class Action Compl., *Horowitz v. SunEdison, Inc.*, No. 1:16-cv-07917-PKC (S.D.N.Y. July 22, 2016), ECF No. 69.

Pursuant to this Court's December 19, 2016 order, the parties engaged in mediation discussions, including the exchange of mediation position statements, and submitted pre-motion to dismiss letters.  Order, *In re SunEdison, Inc., Sec. Litig.*, No. 1:16-md-2742-PKC (S.D.N.Y. Dec. 19, 2016), ECF No. 94.  Subsequently, after two former SunEdison executives filed whistleblower complaints—in *Domenech v. TerraForm Global, Inc.*, 8:17-cv-00515-GJH (D. Md.) and *Gundin v. TerraForm Global, Inc.*, 8:7-cv-00516-GJH (D. Md.) (the "Whistleblower Complaints")—MERS and ATRS sought and were granted leave to file a second amended complaint, representing to this Court that they intended to incorporate new allegations based on the Whistleblower Complaints.[1]  Neither of the Whistleblower Complaints contain any allegations of wrongdoing by KPMG, and one alleges that SunEdison's General Counsel falsely stated that KPMG had assisted in a liquidity review in the fall of 2015.  *See* Compl. ¶¶ 11, 117–18, *Gundin v. TerraForm Global, Inc.*, No. 8:7-cv-00516-GJH (D. Md. Feb. 21, 2017).  ATRS

---

[1] Mem. Endorsing Req. to Amend at 1, *In re SunEdison, Inc., Sec. Litig.*, No. 1:16-md-2742-PKC (S.D.N.Y. Feb. 28, 2017), ECF No. 154.  The new allegations in the March 17, 2017 SAC go well beyond the scope of the amendments Plaintiffs identified in their request to amend, and include new allegations against KPMG that are not based on the Whistleblower Complaints.  *Id.*

ignores this allegation.  Regardless, even with the new allegations in the SAC, ATRS fails to state a claim against KPMG.

## II.    OVERVIEW OF ATRS'S ALLEGATIONS AS TO KPMG

KPMG was SunEdison's independent auditor for the audit of SunEdison's 2014 financial statements and ICOFR as at December 31, 2014.  KPMG did not issue any opinion with regard to SunEdison's 2015 financial statements or its ICOFR as at December 31, 2015.  In connection with the 2014 audit, KPMG issued an audit report, dated March 2, 2015, containing its opinions that SunEdison's financial statements as at December 31, 2014 fairly presented, in all material respects, SunEdison's financial condition, and that SunEdison maintained, in all material respects, effective ICOFR as at December 31, 2014.  SAC ¶ 487.

This audit report was included in SunEdison's year-end 2014 10-K that was filed with the Securities and Exchange Commission ("SEC") on March 2, 2015.  *Id.* ¶ 487.  ATRS also mentions in passing that KPMG consented to the "incorporation by reference" of its audit report into the Preferred Offering, which offered 650,000 shares of SunEdison Series A Perpetual Convertible Preferred Stock priced at $1,000 per share.  *Id.* ¶¶ 120, 450, 486–87.  But ATRS fails to identify any connection between KPMG's consent and any alleged omissions or misstatements.  ATRS's single claim against KPMG is based solely upon alleged losses suffered by investors who purchased stock pursuant to the Preferred Offering.  *Id.* ¶ 505.

ATRS does not (and cannot) allege that KPMG was responsible for any misstatements or omissions at the time of the Preferred Offering or at the time of KPMG's consent to the incorporation by reference of its 2014 audit report therein.  ATRS's inadequate theory of liability rests upon KPMG's opinion in its 2014 audit report that its audit was conducted in accordance with PCAOB standards, which at the time included all Generally Accepted Auditing Standards

("GAAS") applicable to the audit.[2]  *Id.* ¶¶ 486, 488.  ATRS baselessly alleges that KPMG did

not "comply with GAAS" in conducting its 2014 year-end audit of SunEdison's financial

statements and ICOFR, and therefore its opinion that it conducted its audit in accordance with

PCAOB standards is an untrue factual statement.[3]  *Id.* ¶¶ 486, 488, 489, 490, 503, 514.

ATRS admits, however, that its sole claim is based upon an "inference" that had KPMG

conducted its audit in accordance with PCAOB standards, the only possible conclusion it could

have drawn was that there were certain alleged internal control deficiencies at SunEdison.  *See,*

*e.g.*, *id.* ¶¶ 489, 492–96.  Yet ATRS's admitted "inference" is based entirely on *subsequent*

*statements* made by SunEdison in *early 2016*—regarding internal control issues related to the

financial reporting period covered by the company's never-filed draft *2015 year-end* 10-K—long

after KPMG had completed its audit, issued its 2014 audit report, and consented to the

incorporation by reference of its audit report into the Preferred Offering.  *Id.* ¶¶ 492–502.  Those

subsequent statements do not relate to 2014.  Further, ATRS attempts to bolster its "inference"

by employing alleged statements by confidential witnesses.  Nowhere, however, does ATRS

---

[2] KPMG's audit report in SunEdison's 2014 year-end 10-K states: "We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States)."  SAC ¶ 488 (quoting from SunEdison, Inc., Form 10-K, Ex. 2 at 105–06 (Mar. 2, 2015)).  In the SAC, ATRS notes: "All references to GAAS hereinafter include PCAOB standards."  *Id.* ¶ 486 n.5.

Rule 201 of the Federal Rules of Evidence allows the Court to take judicial notice of facts which: 1) are "generally known within the trial court's territorial jurisdiction," or 2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  The Court may take judicial notice of filings with the SEC.  *See In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 427 (S.D.N.Y. 2009).  Further, Plaintiffs refer to and quote from SunEdison's 2014 Form 10-K and other SEC filings throughout the SAC, thereby incorporating them by reference and demonstrating their reliance on these filings in bringing their suit.  *See, e.g.*, SAC ¶¶ 92, 228, 427; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (internal citations omitted).  For these reasons, KPMG respectfully requests that the Court take judicial notice of the attached SEC filings.  SunEdison's as-filed 2014 Form 10-K, containing KPMG's corresponding audit report at pages 105–106, is attached as Ex. 2.  All exhibit citations in the present memorandum are to the Defendants' Motions to Dismiss Exhibits List, supported by the Omnibus Declaration of Jaime A. Bartlett in Support of the Defendants' Motions to Dismiss.

[3] ATRS expressly disclaims any allegations of fraud against KPMG and the other defendants to the Section 11 claim, clarifying that it does not allege that these defendants acted with intentional, reckless, or otherwise fraudulent intent.  SAC ¶ 504; *see also id.* ¶ 424.

allege that these secret individuals communicated with KPMG. *Id.* ATRS's stacked, inferential, and wholly conclusory allegations cannot and do not state a claim pursuant to any valid theory of liability under Section 11. In fact, viewed as a whole, the allegations in the SAC only allege the rather obvious point that any financial problems leading to SunEdison's bankruptcy arose in late 2015, directly undermining ATRS's theory of liability against KPMG.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In accepting as true all factual allegations in the complaint, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Id.* (citing *Twombly*, 550 U.S. at 555). Under Rule 8(a)(2), a plaintiff must make a "showing, rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3 (internal quotations omitted). ATRS fails to meet its burden, and its claim against KPMG must be dismissed.

## ARGUMENT

## I.   ATRS'S CLAIM MUST BE DISMISSED BECAUSE IT FAILS TO PLAUSIBLY ALLEGE SECTION 11 LIABILITY AGAINST KPMG.

ATRS fails to allege a Section 11 claim against KPMG that is plausible on its face. ATRS's claim hinges upon the repeated inferential and conclusory allegation that, had KPMG conducted its 2014 audit in accordance with PCAOB standards, it would have discovered certain alleged internal control deficiencies at SunEdison that are not alleged to have developed until the fall of 2015. *See, e.g.*, SAC ¶¶ 496–97. This core premise fails for two reasons. First, since

ATRS's pleading is predicated upon events and circumstances that began in October 2015, ATRS fails to plausibly allege any misstatements or omissions made by KPMG in connection with its 2014 audit, including at the time of KPMG's March 2, 2015 audit report and consent, and even at the time of the August 18, 2015 Preferred Offering.  Second, ATRS fails to plausibly allege that the purported internal control deficiencies relate to external financial reporting, as required for them to be relevant to KPMG's opinion regarding the effectiveness of SunEdison's internal control *over financial reporting* (i.e., ICOFR).  Because the sole underlying premise for ATRS's claim against KPMG fails for these reasons, the claim must be dismissed.

### a.  ATRS Fails to Plausibly Allege Any Misstatements or Omissions by KPMG Related to 2014, the Only Period Covered by KPMG's Audit.

ATRS fails to plausibly allege any misstatements or omissions made by KPMG in its opinions related to SunEdison's financial statements and ICOFR as at December 31, 2014. ATRS's conclusory allegations do not support its admitted "inference" that internal control issues existed as at December 31, 2014.  To the contrary, the fact that ATRS fails to identify any misstatements or omissions in SunEdison's financial statements for that period supports the opposite inference—that there were no deficiencies in SunEdison's internal control *over financial reporting* as at December 31, 2014.  *See In re Braskem S.A. Sec. Litig.*, No. 15 Civ. 5132 (PAE), 2017 WL 1216592 at *15–*16 (S.D.N.Y. Mar. 30, 2017) (concluding that claims of deficient internal controls "founder[ed]" where plaintiffs failed to allege that the financial reports were inaccurate).  ATRS's incorporation of allegations from the Whistleblower Complaints further undermines its theory of liability against KPMG.  In fact, viewed as a whole, the allegations in the SAC actually establish that SunEdison's financial problems did not arise until the fall of 2015, and that those problems were the direct result of alleged ambitious changes to SunEdison's business model that occurred in 2015, after KPMG issued its 2014 audit report and

8

consented to the incorporation by reference of its audit report into the Preferred Offering, and even after the Preferred Offering itself.[4]  ATRS's allegations—essentially, that KPMG's opinions on SunEdison's 2014 financial statements and ICOFR as at December 31, 2014 were no longer true in late 2015 and 2016—fail to state a Section 11 claim, which requires that the statement be "materially false or misleading *at the time it is made*."  *Friedus v. ING Groep N.V.*, 736 F. Supp. 2d 816, 826 (S.D.N.Y. 2010), *aff'd in part, vacated in part*, 601 F. App'x 59 (2d Cir. May 5, 2015) (emphasis added).[5]

As ATRS details in the SAC, SunEdison's business changed dramatically over the course of 2015, a year of rapid growth involving billions of dollars in new acquisitions and deals and significant expansion into new markets.  *See, e.g.*, SAC ¶¶ 43, 97, 101–02, 106, 298; *see also* Securities Act Br. at 3–4, 6 (describing how SunEdison's "total indebtedness more than quadrupled" and citing financial commentators' views that SunEdison's evolving structure required that it "keep acquiring and developing projects," putting it "on a treadmill of sorts"). ATRS alleges that SunEdison began 2015 by completing its acquisition of First Wind for $2.4 billion in January 2015, SAC ¶ 298, followed in May 2015 by the creation of a warehouse credit agreement with First Reserve Corp. for $1.5 billion.  SAC ¶ 106.  June and July 2015 saw even

---

[4] The plausibility of ATRS's allegations, and its reliance on confidential witnesses is further undermined by factual contradictions that are revealed when the allegations are examined in light of publicly available information.  For example, ATRS alleges that one confidential witness describes EchoFirst, a company SunEdison acquired in July 2013, as having a "massive" accounting system that was never integrated into SunEdison's own systems.  SAC ¶ 70.  However, the EchoFirst acquisition was too immaterial and insignificant to even be reported in SunEdison's filings with the SEC.  *See, e.g.*, SunEdison Inc., Form 10-K (Mar. 6, 2014), Ex. 1.  In another example, ATRS alleges a different confidential witness identified a 2012 deficiency that had an impact of $45 million.  SAC ¶ 88. However, the actual total quoted and reflected in public filings was $22.6 million where the total Q3 gross profit was $227.4 million.  MEMC Electronic Materials, Inc., Form 10-Q, at 3, 7 (Nov. 9, 2012), attached as Ex. 5.  See *supra* n.2 regarding judicial notice for SEC filings.

[5] Regardless, even if ATRS's allegations regarding 2015 were relevant to its claim against KPMG, which they are not, the allegations fail to satisfy the qualitative and quantitative factors required for a showing of materiality under Section 11.  *See* Mem. of Law in Support of Defs.' Joint Mot. to Dismiss Pls.' Claims Under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act Brief") at 14–16, *Horowitz v. SunEdison, Inc.*, No. 1:16-cv-07917-PKC, ECF No. 146 (S.D.N.Y. June 9, 2017).

more activity, during which time ATRS alleges SunEdison purchased, or agreed to purchase, ten different energy acquisition projects, SAC ¶ 43, including, in late July 2015, the announcement of the $2.2 billion acquisition of Vivint Solar.  SAC ¶ 97.

As a result of its drastically changed business model, by late 2015, SunEdison's stock price was falling, in part because of the announcement of the Vivint Transaction and the company's over-committed available cash position.  *See, e.g.*, *id.* ¶¶ 5, 11, 44, 129, 134, 170, 178.  According to allegations incorporated by ATRS from the Whistleblower Complaints, the company's financial problems were exacerbated and amplified by SunEdison management's alleged manipulation and misrepresentation of the company's cash positions throughout the fall of 2015.  Citing "detailed and credible allegations" by the Whistleblowers, ATRS alleges a series of events that unfolded between the "fall of 2015 and the end of the Class Period," where management allegedly misled SunEdison's Board of Directors and the public regarding the company's financial condition.  *See id.* ¶ 16 ("Chatila and Wuebbels continued to fraudulently conceal and misrepresent SunEdison's hobbled liquidity position" despite being urged to ensure the accuracy of SunEdison's disclosures by several officers); *see also id.* ¶¶ 108, 130.[6]

All of these developments occurred well after KPMG issued its audit opinions on SunEdison's 2014 financial statements and ICOFR as at December 31, 2014 and consented to the incorporation by reference of its audit report into the Preferred Offering.  Moreover, the allegations in the Whistleblower Complaints—which ATRS cites favorably as being "based on

---

[6] Regarding ATRS's reliance on allegations from the Whistleblower Complaints, the law in this Circuit "is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f)."  *RSM Prod. Corp. v. Fridman,* 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009) (citing *Lipsky v. Commonwealth United Corp*., 551 F.2d 887 (2d Cir. 1976)); *see also In re CRM Holdings, Ltd. Sec. Litig*., No. 10 CIV 00975 RPP, 2013 WL 787970, at *5 (S.D.N.Y. Mar. 4, 2013) (declining to reconsider decision to exclude plaintiffs' citation to unproven allegations made in other complaints that had no evidentiary bearing on plaintiffs' case).  *But see In re OSG Sec. Litig*., 12 F. Supp. 3d 619, 621 (S.D.N.Y. 2014) (holding that plaintiffs could amend complaint to add factual allegations from a separate proceeding).

firsthand knowledge" and the "personal observations [of] senior executives at SunEdison who were intimately involved in SunEdison's strategic conversations"—utterly contradict ATRS's proposition that SunEdison's financial problems arose from internal control deficiencies as at December 31, 2014.  The Whistleblower accounts plainly allege that SunEdison's financial issues did not arise until the "fall of 2015," and were exacerbated by management's manipulation of SunEdison's cash positions and misrepresentations to SunEdison's directors and the investing public.  *See* Compl. ¶ 2, *Gundin v. TerraForm Global, Inc.*, No. 8:7-cv-00516-GJH (D. Md. Feb. 21, 2017).

Tellingly, the Whistleblower Complaints do not include a single allegation referencing or asserting any knowledge by KPMG—for example, of SunEdison's alleged financial problems and alleged internal control deficiencies at any point, and certainly not as of March 2, 2015.  In fact, the only references to KPMG are in allegations that a SunEdison executive claimed that the company conducted a liquidity review in conjunction with KPMG in response to red flags raised by the Whistleblower plaintiff, when in fact KPMG had "no involvement whatsoever" in conducting the alleged review, and was not even aware of the Whistleblower's allegations. Compl. ¶ 11, 117–18, *Gundin v. TerraForm Global, Inc.*, No. 8:7-cv-00516-GJH (D. Md. Feb. 21, 2017).  Counsel for SunEdison's audit committee later stated in a letter to *Gundin* plaintiff's counsel that "KPMG was not informed" of the letters sent to the plaintiff or of the allegations plaintiff had made regarding SunEdison's liquidity issues.  *Id.*

ATRS cannot cherry pick certain allegations from the Whistleblower Complaints that it contends support its position and ignore those that directly contradict it.  Regardless, the factual allegations in the Whistleblower Complaints about problems that purportedly arose in the fourth quarter of 2015 plainly undermine ATRS's theory of liability against KPMG simply as a matter

11

of chronology.  Meanwhile, the allegations about so-called internal control deficiencies are never specifically tied to 2014, KPMG's March 2, 2015 audit report and consent, or the August 2015 Preferred Offering, and are based on statements from unnamed confidential witnesses never alleged to have communicated with KPMG.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 617 (9th Cir. 2017) (finding a flaw in plaintiff's failure to connect confidential witnesses to alleged erroneous accounting activities).  Moreover, ATRS's generic allegations of "internal control" problems are never linked to ICOFR, as discussed in more detail below.  *See, e.g.*, *id.* ¶¶ 76, 79, 84.

In sum, ATRS fails to sufficiently plead its allegation that internal control problems— much less problems affecting ICOFR—existed at December 31, 2014, the sole period covered by KPMG's audit.  Far from plausibly alleging any misstatements or omissions by KPMG in 2014, the SAC supports the conclusion that SunEdison's financial problems arose in late 2015, long after KPMG issued the audit report and consent that provide the sole basis of ATRS's claim, and after the Preferred Offering itself.  ATRS's failure to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), requires that its sole claim against KPMG be dismissed.

      **b.**      **ATRS Fails to Plausibly Allege That the Purported Internal Control Deficiencies Related to Financial Reporting and Were Thus Relevant to KPMG's ICOFR Opinion.**

The alleged internal control deficiencies that ATRS identifies in the SAC have no plausible relation to external financial reporting and therefore have no relevance to KPMG's opinion regarding SunEdison's internal control *over financial reporting* (i.e., ICOFR).  For this independent reason, ATRS's single claim against KPMG must be dismissed.

PCAOB Auditing Standard No. 5 ("AS No. 5") governs an auditor's responsibilities when performing "an audit of internal control over financial reporting that is integrated with an audit of financial statements" (i.e., an ICOFR audit).  PCAOB, AS No. 5, https://pcaobus.org /Standards/Auditing/Pages/Auditing_Standard_5.aspx.[7]  Even accepting ATRS's mischaracterizations as true, ATRS fails to plausibly allege how any of the purported internal control deficiencies relate to external financial reporting, or how they fit within the standards established in AS No. 5 for an ICOFR audit.  Absent such allegations, ATRS's sole claim against KPMG is deficient as a matter of law.

First, ATRS alleges that SunEdison failed to integrate systems across its acquired companies.  SAC ¶ 497; *see also id.* ¶¶ 495, 500.  However, AS No. 5 does not require the use of a single, integrated system for external financial reporting or ICOFR; in other words, electing not to integrate companies' systems is not a control deficiency.  *See generally* AS No. 5, Ex. 42.  It should not be surprising that merged and acquired companies' software systems differ.  *Cutsforth v. Renscher*, 235 F. Supp. 2d 1216, 1244 (M.D. Fl. 2002).  ATRS's criticism that SunEdison

---

[7] Auditing standards are properly the subject of judicial notice because the PCAOB and the American Institute of Certified Public Accountants ("AICPA") are professional organizations and there is no cause to question the accuracy of the standards published by them.  *See Anchor Sav. Bank, FSB v. United States*, 81 Fed. Cl. 1 (2008), as corrected (July 16, 2008), *aff'd in part, remanded in part*, 597 F.3d 1356 (Fed. Cir. 2010) (taking judicial notice of Federal Accounting Standards Board standard FAS 109); *see also In re Elec. Data Sys. Corp. Sec. & "ERISA" Litig.*, 298 F. Supp. 2d 544, 549 n.9, 550 (E.D. Tex. 2004) (taking judicial notice that the AICPA is "the national, professional organization for all certified public accountants…responsible for establishing and maintaining standards and requirements of professional conduct among certified public accountants").  Courts do not hesitate to review and rely on auditing standards to grant a motion to dismiss.  *See Vladimir v. Deloitte & Touche LLP*, No. 95 Civ. 10319 (RPP), 1997 WL 151330, at *4-6 (S.D.N.Y. Mar. 31, 1997); *see also In re Ramp Corp. Sec. Litig.*, No. 05 CIV. 6521 (DLC), 2006 WL 2037913, at *8 (S.D.N.Y. July 21, 2006) (evaluating auditing standards in granting motion to dismiss).  KPMG respectfully requests that the Court take judicial notice of the attached auditing standards, which are relied upon by plaintiffs in the SAC and published by sources "whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  All cited auditing standards are attached as Ex. 42.

All auditing standard citations herein are to the standards that were in effect during the relevant timeframe in the SAC.  The PCAOB recently reorganized its standards, but the pre-reorganization standards are relevant here, as they were in effect for fiscal years ending on or after November 15, 2007 and before December 31, 2016.  *See* Pre-Reorganized Auditing Standards and Interpretations, https://pcaobus.org/Standards/Auditing/Pages/ PreReorgStandards.aspx; Ex. 42.

chose not to integrate the systems following acquisitions is no more than a disagreement with

managerial decisions, not a violation of Section 11. *See id.*  Second, ATRS alleges that

consolidated financial data was "inappropriately" stored on a Microsoft Excel spreadsheet

without input and access controls.  SAC ¶ 497; *see also id.* ¶ 493.  But AS No. 5 does not require

a specific type of accounting system and contains no prohibition against using Excel.  *See*

*generally* AS No. 5, Ex. 42.  But even ignoring AS No. 5, the SAC fails to link any of the alleged

issues with using Excel to external financial reporting.  Third, ATRS alleges that SunEdison had

a high turnover rate of accountants, but fails to indicate what specific control deficiencies this

allegedly resulted in or how it was connected to external financial reporting.  SAC ¶ 497.

Fourth, ATRS alleges that SunEdison was unable to accurately account for its "available cash"

but fails to demonstrate how available cash has any relevance to external financial reporting or

ICOFR.  *Id.*  This failure is not surprising, given that "available cash" is not a financial statement

assertion subject to audit.  *See generally* SunEdison, Inc., Form 10-K (Mar. 2, 2015).  Its only

relevance is to "management's discussion and analysis or other similar financial information

presented outside a company's GAAP-basis financial statements and notes," which AS No. 5

states, is not even part of the "financial statements" covered by an ICOFR audit.  AS No. 5, App.

A4, Ex. 42.

    In sum, ATRS fails to plausibly connect any of its alleged internal control deficiencies to

external financial reporting, and thus fails to allege that any of these deficiencies are relevant to

KPMG's ICOFR opinion.  Accordingly, ATRS's claim against KPMG must be dismissed.

## II.    ATRS'S SECTION 11 CLAIM MUST BE DISMISSED FOR FAILURE TO
         STATE A CLAIM UNDER THE SUPREME COURT'S *OMNICARE* DECISION
         AND ITS PROGENY.

    Beyond ATRS's failure to satisfy Rule 8(a), ATRS fails to state any valid theory of

liability against KPMG under Section 11.  To state a Section 11 claim, a plaintiff must

adequately allege that a defendant misstated or omitted a material *fact* in a registration statement. *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010). An auditor is only subject to Section 11 liability as to those portions of the registration statement that are purportedly prepared or certified by the auditor. *See In re Lehman Bros. Sec. & ERISA Litig.* (Lehman II), 131 F. Supp. 3d 241, 259–60 (S.D.N.Y. 2015) (citing 15 U.S.C. § 77k(a)(4)). ATRS does not allege that KPMG prepared or certified any portion of the registration statement at the time of the Preferred Offering—only that it consented to the incorporation by reference of its 2014 audit report therein. *See* SAC ¶ 487.[8] ATRS's entire claim relies on its unsupported (and unsupportable) allegation that KPMG's opinion—that its 2014 audit was conducted in accordance with PCAOB standards—was an untrue factual statement. *See, e.g.*, SAC ¶ 488.

ATRS's characterization of KPMG's opinion as a *factual misstatement* is incorrect as a matter of law. Courts have repeatedly held that identical statements are *opinion statements* based upon professional judgment.[9] *See, e.g.*, *In re Lehman Bros. Sec. & ERISA Litig.* (Lehman I), 799 F. Supp. 2d 258, 298, 302 (S.D.N.Y. 2011) (holding that an identical statement "inherently was one of opinion"); *Perry v. Duoyuan Printing, Inc.*, No. 10 Civ. 7235 (GBD), 2013 WL 4505199, at *2, *5 (S.D.N.Y. Aug. 22, 2013) (same). As the Supreme Court held in *Omnicare*, a "sincere statement of pure opinion is not an 'untrue statement of material fact'" under Section 11. 135 S. Ct. at 1327. Rather, such opinions are only subject to Section 11 liability under the heightened pleading standards set forth in *Omnicare* and its progeny, which are "no small task" for an

---

[8] Most of the SAC's allegations related to the Preferred Offering focus on alleged misstatements and omissions by members of SunEdison's management and the independent underwriters, who were primarily responsible for the statements in the registration statement. *See, e.g.*, SAC ¶¶ 117, 291–92, 421–24, 433, 440–44.

[9] ATRS appears to acknowledge as much in its equally conclusory alternative allegation that, "to the extent KPMG's statements that it conducted its audit in accordance with GAAS are deemed statements of opinion or belief, those statements were materially misstated statements of opinion or belief when made." SAC ¶ 490. As discussed, however, ATRS fails to state a claim regardless of how it attempts to mischaracterize KPMG's opinion.

investor to satisfy. *See Omnicare*, 135 S. Ct. at 1332. ATRS has not and cannot state a claim against KPMG under those standards.

The Supreme Court in *Omnicare* clarified that Section 11 is not "an invitation to Monday morning quarterback" opinions in registration statements. *Omnicare*, 135 S. Ct. at 1327. In *Omnicare*, the Supreme Court confirmed that pure statements of opinion, without more, do not trigger liability under Section 11—which the Court emphasized expressly holds the speaker liable for "untrue statement[s] of . . . *fact*." *Omnicare*, 135 S. Ct. at 1325–26 (quoting 15 U.S.C. § 77k(a)) (emphasis and ellipsis in original).

Courts applying *Omnicare* have held that an opinion is only subject to Section 11 liability if a plaintiff adequately alleges that one of the following exceptions applies: (1) the speaker does not actually hold the stated opinion; (2) the opinion contains an embedded statement of fact that is misleading; or (3) the opinion omits a fact that makes the opinion misleading to an ordinary investor. *See, e.g.*, *In re Am. Realty Capital Props., Inc. Litig.*, No. 15 MC 40 AKH, 2015 WL 6869337, at *2 (S.D.N.Y. Nov. 6, 2015) (applying *Omnicare's* opinion standard to Section 11 claims involving an auditor's opinion). Courts have interpreted these three exceptions as exclusive. *See, e.g.*, *id*. at *2 ("Under *Omnicare*, an auditor can be liable under Section 11 for its audit opinion in only three circumstances."). ATRS fails to state a claim against KPMG under any of these exceptions to the general rule that pure opinion statements do not trigger liability under Section 11.

a.     **ATRS Fails to Allege that KPMG Did Not Hold Its Opinion.**

To allege that KPMG did not actually hold its opinion that it conducted its audit in accordance with PCAOB standards would require ATRS to show that KPMG's opinion was both objectively and subjectively false when made. *See Omnicare*, 135 S. Ct. at 1326 & n.2; *In re Fairway Grp. Holdings Corp. Sec. Litig.*, No. 14 Civ. 0950, 2015 WL 4931357, at *10–11

16

(S.D.N.Y. Aug. 19, 2015) (citing *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011))

(interpreting and applying *Omnicare* in the context of a Section 11 claim not involving an

auditor); *see also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,

856 F.3d 605, 617–19 (9th Cir. 2017) (finding plaintiff failed to plead subjective or objective

falsity regarding statement of opinion over goodwill).  Alleging subjective falsity requires

"particularized, non-conclusory factual allegations to show that" KPMG did not believe its

opinion when made.  *In re Fairway Grp.*, 2015 WL 4931357, at *17.  Although ATRS makes the

conclusory assertion that KPMG's opinion was untrue, SAC ¶ 488, it fails to allege that KPMG

did not believe the opinion when stated, or at any other time.  By expressly disclaiming

allegations that KPMG acted with intentional, reckless, or fraudulent intent, *id.* ¶¶ 424, 504,

ATRS concedes that there is no foundation for a finding of liability under this exception.  *See

Omnicare*, 135 S. Ct. at 1327 (referring to plaintiffs' statement excluding any claim sounding in

fraud to support conclusion that plaintiffs did "not contest that Omnicare's opinion was honestly

held").[10]

> **b.    ATRS Fails to Allege a Single Misstatement of Fact Embedded in KPMG's
> Opinion.**

There is no allegation that KPMG's opinion contained a false or misleading embedded

statement of fact.  A statement embedded within a sentence expressing an opinion may be a fact

susceptible to Section 11 where it is determinate and verifiable.  *See id.* at 1326–27; *see also

Fairway Grp.*, 2015 WL 4931357, at *21 (applying *Omnicare*'s embedded fact exception and

finding that the "alleged embedded facts are not determinate or verifiable").  As explained above,

however, KPMG's statement that it conducted its audit in accordance with PCAOB standards is

---

[10] Further, allegations in the SAC that SunEdison management concealed potentially troubling and material
information from KPMG would also undermine any attempt by ATRS to suggest that KPMG did not believe its
opinion when made.  *See* SAC ¶¶ 77, 84.

an opinion. *See, e.g.*, *Lehman I*, 799 F. Supp. 2d 258, 298, 302 (S.D.N.Y. 2011). ATRS alleges that this opinion was untrue, and, alternatively, that it was a "materially misstated statement[] of opinion or belief when made." SAC ¶¶ 488, 490. ATRS does not even attempt to allege, however, a single embedded alleged misstatement of fact within this opinion. Accordingly, ATRS fails to state a claim for Section 11 liability against KPMG under this exception.

> ### c.   ATRS Fails to Sufficiently Allege Misleading Omissions from KPMG's Opinion.

There is no allegation that KPMG's opinion omitted a material fact that would make it misleading to an ordinary investor. To plead this exception, a plaintiff must "identify particular (and material) facts going to the basis for the issuer's opinion —facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Omnicare*, 135 S. Ct. at 1332. This is "no small task for an investor." *Id.* Merely relying on conclusory allegations that a defendant "should have been aware" of facts that might have contradicted its opinion, that "any reasonable auditor would have discovered" such facts, or that the auditor missed certain "red flags" identified by confidential witnesses who did not share the "red flags" with the auditor is insufficient. *See Fairway Grp.*, 2015 WL 4931357, at *19; *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, No. 1:12-cv-00993, 2016 WL 7117455, at *14–15 (M.D. Pa. Dec. 7, 2016) (citing *Fairway Grp.*); *see also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 619 (9th Cir. 2017) ("Plaintiff's allegation that Defendants failed to conduct any goodwill impairment testing at the end of 2011 is not a *fact*, but rather Plaintiff's *conclusion* based on its belief that no set of reasonable assumptions could support Defendants' determination in the fourth quarter of 2011 that the SCCS goodwill was unimpaired. We need go no further in concluding that it cannot serve as an

omission of fact that sufficiently pleads falsity. Because Plaintiff cannot identify any material facts omitted by Defendants, Plaintiff fails to plead falsity under an omissions theory of liability . . . ." (emphasis in original)).  Instead, a plaintiff must "identify actual and material steps taken or not taken by [an auditor] in its audit, or knowledge that it did or did not have in the formation of its opinion." *Orrstown*, 2016 WL 7117455, at *14 (citing *Omnicare* and *Fairway Grp.*).

The SAC fails to allege any actual or material steps that KPMG took, or should have taken, in order to comply with PCAOB standards.  Instead, it merely recites, in an elementary and conclusory fashion, a number of auditing standards that KPMG allegedly did not follow. SAC ¶¶ 491, 492, 499–502.  Read closely, the SAC does not allege, anywhere, *how* KPMG failed to adhere to these standards.  Instead, the SAC merely repeats the allegations regarding SunEdison's purported lack of internal controls and balance sheet issues (all of which are alleged to have occurred well after KPMG rendered its opinion and its corresponding consent).  *See id.* ¶¶ 498, 500, 503.  In essence, ATRS attempts to bootstrap a Section 11 claim against KPMG based upon allegations about purported events that occurred after KPMG issued its 2014 audit report and consented to the incorporation by reference of its audit report in the Preferred Offering.  Post-*Omnicare*, other courts have held that this approach is not legally sufficient.  A plaintiff cannot satisfy its burden to allege a specific, material factual omission by alleging that an auditor should have uncovered alleged deficiencies that surface after the fact.  *See Fairway Grp.*, 2015 WL 4931357, at *19 (explaining that allegations that a defendant "should have been aware of facts contradicting their opinions" is insufficient to state a securities fraud claim); *Orrstown*, 2016 WL 7117455, at *14 (finding allegations that "any reasonable auditor would have discovered" material weakness in ICOFR to be insufficient to state a claim under Section 11 after *Omnicare* (citing *Fairway Grp.*)).

19

Far from identifying particular and material facts, or actual and material steps taken or not taken by KPMG, ATRS's threadbare allegations of KPMG omissions consist of conclusory recitations of statutory language into which ATRS essentially pastes KPMG's name, SAC ¶¶ 503, 514, and the circular assertion that KPMG's opinion "omitted to inform investors that its audit did not show a sufficient factual basis to conclude that SunEdison had effective internal controls." *Id.* ¶ 490. Obviously, this fails under *Omnicare*. *See* 135 S. Ct. at 1333. So too does ATRS's allegation that KPMG omitted the "fact" that its audit did not have a sufficient factual basis, as ATRS does not allege with any specificity the steps that KPMG failed to take in conducting its audit or, most glaringly, the missing factual bases. *See Omnicare*, 135 S. Ct. at 1332.

Instead, ATRS wants this Court to infer that internal control issues existed at the end of 2014 and that, "[h]ad KPMG complied with GAAS, the only reasonable professional conclusion it *could* have drawn *would* have been that [SunEdison's] internal controls were ineffective and materially inadequate." SAC ¶ 496 (emphases added); *see also id.* ¶¶ 492–502. As discussed above, these repetitive conclusory allegations are themselves only based on the "subsequent admissions" by SunEdison in *2016* regarding deficiencies related to the never-filed draft *2015 year-end* 10-K, a time period not opined on by KPMG, and sometimes contradicted statements by secret witnesses who are not alleged to have communicated with KPMG. *Id.*; *see also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 617 (9th Cir. 2017) (finding a flaw in plaintiff's failure to connect confidential witnesses to alleged erroneous accounting activities). These are precisely the types of "should have been aware" and "any reasonable auditor would have discovered" allegations that courts have found deficient under *Omnicare*. *Fairway Grp.*, 2015 WL 4931357, at *19; *Orrstown*, 2016 WL 7117455, at

*14; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))); *id.* at

679 ("But where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader

is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2))).

> **d.    ATRS Fails to Allege that KPMG is Liable Under Section 11 for "Certifying" SunEdison's Financial Statements and Internal Controls.**

ATRS also fails in its attempt to allege that KPMG is liable under Section 11 for

"certifying" SunEdison's internal controls.[11]  Conclusory allegations consisting of little more

than a few passing references to variations on the word "certification," are insufficient to

establish Section 11 liability against KPMG.[12]

Auditor certification liability, as developed by district courts in the Second Circuit prior

to *Omnicare*, allows a plaintiff to bring a Section 11 claim against an *auditor* associated with a

stock offering for alleged misstatements made by the *issuer* of the offering, only where the

issuer's misstatements were purportedly "certified" by the auditor.  *See In re OSG Sec. Litig.*,

971 F. Supp. 2d 387, 400 & n. 87 (S.D.N.Y. 2013) (collecting cases).  To plead liability under

this theory, a plaintiff must identify specific misstatements made by the issuer in the registration

statement that the auditor allegedly certified.  *See Lehman II*, 131 F. Supp. 3d 241, 250–55, 260

---

[11] Though ATRS references both financial statements and internal controls in its cursory certification allegations, it proceeds to focus solely on alleged deficiencies in SunEdison's internal controls, abandoning the concept of financial statement certification.  *See* SAC ¶¶ 489–503.

[12] *See id.* ¶ 489 ("In *certifying* SunEdison's financial statements and internal controls, KPMG specifically represented (based on its GAAS audit) that the Company maintained effective internal controls over financial reporting as of December 31, 2014.  In other words, KPMG's *certification* represented to investors that it purportedly conducted an audit in compliance with GAAS, and that the audit included a factual basis to conclude that SunEdison had effective internal controls." (emphases added)); *id.* ¶ 496 ("Instead, KMPG [sic] *certified* to investors that the Offering Documents (and incorporated period reports) accurately represented the Company's finances and internal controls." (emphasis added)).

(S.D.N.Y. 2015) (identifying an "arguably false statement in the footnote" to Lehman's financial statements); 971 F. Supp. 2d at 399–400 (identifying an alleged misstatement by the issuer in the financial statements related to a tax liability).  In these cases, an auditor's opinion on an issuer's financial statements have historically provided the basis for establishing liability against the auditor for "certifying" the issuer's misstatements in the financials, subject to a defense of due diligence.  *See Lehman II*, 131 F. Supp. 3d at 260; 971 F. Supp. 2d at 400.

Here, ATRS's passing attempt to allege auditor certification liability against KPMG fails for three reasons.  First, even accepting ATRS's questionable legal premise, it fails to identify a single misstatement or omission by SunEdison that KPMG allegedly "certified" via its opinion on SunEdison's internal controls as at December 31, 2014.  Alleging such a misstatement or omission is a fundamental requirement to successfully plead auditor certification.  *See, e.g.*, *Lehman II*, 131 F. Supp. 3d at 250–55, 260.  For this reason alone, ATRS's claim against KPMG under the "certification" theory fails.

Second, auditor certification liability should not be extended from the alleged certification of financial statements to internal controls.  Unlike financial statements, internal controls do not concern matters of objective, verifiable fact.  Courts applying certification liability within the Second Circuit have only done so where the allegedly certified misstatements are "matters of objective fact" in a company's financial statements, such as statements regarding income tax liability and financial statement line items.  *See In re OSG Sec. Litig.*, 971 F. Supp. 2d at 398–400 (sustaining a claim for certification liability based on an allegedly misstated tax liability in the issuer's financial statements); *Lehman II*, 131 F. Supp. 3d at 260 (finding that the plaintiff sufficiently alleged certification liability based on an "arguably false statement in the footnote to [Lehman Brothers'] financial statements" related to the categorization of certain

22

transactions as financings rather than sales).  Financial statements are replete with verifiable, measurable facts about the financial state of a company, which can be proven to be true or false. There is no analogue in a company's internal controls, which are policies and procedures established by a company to achieve various objectives, such as ensuring the integrity of financial information.  Because internal controls do not contain objective, verifiable facts, there is no basis for extending auditor certification liability beyond financial statements.

Third, auditor certification liability should no longer be valid post-*Omnicare* because the Supreme Court's three exceptions for Section 11 opinion liability do not include auditor certification.  Courts applying *Omnicare* have interpreted these three exceptions as exclusive.  *In re Am. Realty Capital Props., Inc. Litig.*, No. 15 MC 40 AKH, 2015 WL 6869337, at *2 (S.D.N.Y. Nov. 6, 2015).  Notably absent from the list of exceptions is auditor certification.  *See Johnson v. CBD Energy Ltd.*, No. CV H-15-1668, 2016 WL 3654657, at *10 (S.D. Tex. July 6, 2016) (explaining that in *Omnicare*, "the Court makes no mention of an 'auditor certification' exception").[13]  The inapplicability of auditor certification following *Omnicare* is further supported by the fact that auditors no longer "certify" the accuracy of the financial statements they are auditing, nor do they insure or guarantee a company's internal controls.[14]  Auditors

---

[13] *See also Querub v. Moore Stephens Hong Kong*, 649 F. App'x 55, 58 (2d Cir. 2016) (concluding that audit opinions are opinions subject to the *Omnicare* standard, and implicitly rejecting auditor certification by noting that it found no merit in several of plaintiffs' arguments, which included financial statement certification); *Johnson*, 2016 WL 3654657, at *11 (finding *Querub* "directly contradicts Plaintiffs' assertion that PwC Australia is responsible for CBD's financial statements as statements of fact," and rejecting auditor certification theory of liability).  *But see Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, No. 2:14-cv-02571-MCE-KJN, 2017 WL 1063565 (E.D. Cal. Mar. 21, 2017) (declining to apply *Querub*, noting it was unpublished and not binding on the E.D. Cal., in an opinion rejecting auditor's motion to dismiss a Section 11 claim based in part on certification liability); *Lehman II*, 131 F. Supp. 3d 241, 259–60 (upholding the pre-*Omnicare* formulation of auditor certification liability despite *Omnicare's* implied foreclosure of such liability).  *Marrone Bio* and *Lehman II* misapply *Omnicare*, which shields opinion statements from triggering liability, subject to three exclusive exceptions, of which auditor certification is not one.

[14] Prior to the passage of the Securities Act of 1933 and Section 11, auditors' reports indicated that the auditor had "certified" the "balance sheet" as "correct."  PCAOB, *ACAP Committee's Recommendation Relating to the Auditor's Reporting Model* at 4 (2010), https://pcaobus.org/News/Events/Documents/04072010_SAGMeeting /Auditor's_Reporting_Model.pdf (last visited 5/5/2017).  This practice began to disappear in the 1930s, and by

should not be held to a higher standard by the courts than what is required of them in their industry. *See Escott v. BarChris Const. Corp.*, 283 F. Supp. 643, 703 (S.D.N.Y. 1968). Auditor's opinions should thus be treated as opinions subject to the *Omnicare* standard, and not as certifications of the accuracy of issuers' statements within their financial statements or internal controls.[15]

## CONCLUSION

KPMG was added to the *Horowitz* lawsuit as an afterthought, in an effort to escape the bankruptcy stay and to add a sorely needed deep pocket. ATRS fails to plausibly allege any misstatements or omissions related to KPMG's 2014 audit report or its consent to the incorporation by reference of its audit report in the Preferred Offering. In fact, ATRS fails to identify a single error in SunEdison's financial statements during this period, which directly undermines ATRS's allegation that there were deficiencies in SunEdison's internal control *over financial reporting*. ATRS's incorporation of allegations from the Whistleblower Complaints, which it cites effusively as highly credible sources, only further undermines the plausibility of its flawed theories of liability against KPMG. Taken as a whole, the allegations in the SAC assert that SunEdison's financial problems arose in late 2015 as a result of changes in the company's

---

2014, the standards set by the PCAOB did not contemplate that an auditor would certify, guarantee or insure a company's financial statements or internal control over financial reporting. AU § 230.13.

AU § 230.13 is attached as part of Ex. 42. See *supra* n.7 regarding judicial notice for PCAOB auditing standards. Courts may take judicial notice of documents retrieved from official government websites. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156 (S.D.N.Y. 2015) (taking judicial notice of documents and information on government websites); *see also In re Global Crossing, Ltd. Sec. Litig.*, 471 F. Supp. 2d 338, 343 (S.D.N.Y. 2006) ("The Court may also take judicial notice of matters of public record . . ."). KPMG respectfully requests that the Court take judicial notice of the report from a Committee of the PCAOB, a statutorily created entity, which is attached as Ex. 35.

[15] An auditor's responsibility with regard to financial statements under PCAOB standards in effect in 2014 was "confined" to "express[ing] an *opinion* on the financial statements." AU § 110.03 (emphasis added). AU § 110.03 is attached as part of Ex. 42. See *supra* n.7 regarding judicial notice for PCAOB auditing standards. Moreover, as ATRS's sole claim against KPMG is based on alleged violations of auditing standards, ATRS should not be able to cherry pick which PCAOB standards apply and which ones do not.

business model as well as actions alleged to have been taken by senior management.  These alleged events, having occurred long after KPMG issued the operative audit report and consent, and even after the Preferred Offering itself, are utterly inapposite here.  Further, KPMG's opinion that it conducted its 2014 year-end audit in accordance with PCAOB standards is only subject to Section 11 liability in the narrow circumstances set forth under *Omnicare* and its progeny, none of which are present here.  For these reasons, ATRS's sole claim against KPMG must be dismissed.

Dated June 9, 2017
Washington, D.C.

Respectfully submitted,

*/s/ Charles Wm. McIntyre*
Charles Wm. McIntyre (admitted *pro hac vice*)
Jessica E. Morrison (admitted *pro hac vice*)

**McGuireWoods LLP**
2001 K Street, NW, Suite 400
Washington, DC 20006
(202) 857-1700
Fax: (202) 857-2959
cmcintyre@mcguirewoods.com
jmorrison@mcguirewoods.com

*Counsel for KPMG LLP*